UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09CV-661-H

TEXAS CAPITAL BANK, N.A., et al.                                            PLAINTIFFS

V.

FIRST AMERICAN TITLE INSURANCE CO., et al.                        DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

  Plaintiffs, Texas Capital Bank, N.A. ("Texas Capital"), Liberty Mutual Insurance Europe Limited trading as Liberty International Underwriters ("Liberty"), and Certain Underwriters at Lloyd's London who are members of Syndicate Nos. 4444, 2003 and 4000 subscribing to Bond No. FA054730g002 ("Lloyd's Underwriters") (collectively "Texas Capital" or "Plaintiffs"), bring this action alleging they sustained $3.2 million in losses after Defendants First American Title Insurance Company ("First American Title") and First American Trust ("First American Trust" or "Bank") wrongly transferred certain mortgage funds they were holding in escrow. This matter is before the Court on Defendants' partial Motion to Dismiss, Plaintiffs' Motion for Leave to File a First Amended Complaint and Defendants' Motion to Strike Plaintiffs' First Amended Complaint.

  On April 28, 2010, the Court held a conference to discuss the pending motions and the complex facts underlying this case. Thereafter, the Court allowed the parties a few days to provide any additional information or stipulation. For the reasons discussed at the conference

and explained below, the Court will grant Plaintiffs' Motion for Leave, and partially grant Defendants' Motion to Dismiss by dismissing Defendant First American Trust. These decisions render moot Defendants' Motion to Strike.

I.

The facts giving rise to this case[1] began in March 2008, when Plaintiff Texas Capital entered into a mortgage warehousing agreement with Prajna Group, Inc. d/b/a/ Liberty Mortgage Funding ("Prajna"), a residential mortgage licensee that extended residential mortgage loans to Kentucky consumers. Pursuant to the mortgage warehousing agreement, Texas Capital agreed to fund consumer home mortgage loans originated by Prajna in exchange for a participation or ownership of the majority interest in those loans, and the right to sell the loans on the secondary mortgage market. Prajna is not a party to this case.

Beginning in March 2008, Texas Capital provided the funds for the Prajna home mortgage loans using Defendant First American Title as its escrow agent. First American Title conducts various real estate services, including acting as an escrow agent for real estate closing. Its bank is Defendant First American Trust. The two companies share offices in Santa Ana, California and are owned by the same parent corporation, First American Corporation.

Later in 2008, after First American Title closed its Louisville office, Texas Capital began using Venture Title Group, LLC ("Venture Title") as its escrow agent for the Prajna loans. Texas Capital alleges that it used Venture Title because the company was acting as First American Title's agent in the Louisville market and it was formed by the two individuals from First

---

[1] These facts are taken from Plaintiffs' First Amended Complaint, because the Court's ruling today makes it the pertinent active complaint. For the purposes of this Motion, the Court assumes the truth of Plaintiff's factual allegations. *Minger v. Green*, 239 F.3d 793, 797 (6th Cir. 2001) citing *Gao v. Jenifer*, 185 F.3d 548, 552 (6th Cir. 1999).

American Title – Chris Mooser and Shawn Freibert – that Texas Capital had previously worked with. Venture Title, which was administratively dissolved in June 2009, is not a party to this suit.[2]

During the relevant time period, Texas Capital wired funds for at least twenty-nine properties to First American Title and an account in the name of Venture Title,[3] and those companies held the funds in escrow using either First American Trust or National City as their bank. Texas Capital alleges that these transactions constituted a contract between Texas Capital and First American Title.[4] Eleven of those loans – including six worth $1.9 million where First American Title served as escrow agent and five worth $1.3 million where Venture Title served as escrow agent – are the subject of this lawsuit.

As to the eleven relevant loans, Texas Capital alleges that First American Title and Venture Title were supposed to disburse the loan funds to the sellers of the real property that was to secure repayment of the loan. However, for reasons not yet clear, First American Title and the individuals controlling the Venture Title account did not disburse the funds to the sellers, but instead transferred the money to Prajna, allegedly at Prajna's request. Texas Capital later learned that the loans at issue were fraudulent, in that the designated borrower on each was fictional, or was unaware of and had not consented to, the loan. Prajna filed for Chapter 7 Bankruptcy in the

---

[2] During the time it existed, Venture Title's website contained First American's logo and indicated that Venture Title was First American's "authorized agent." First American Corporation, the parent company for First American Title and First American Trust, listed the Venture Title office as a "branch office." Plaintiff asserts that after Venture Title closed, Mooser and Freibert went back to work for First American Title and continue to work there today.

[3] At the conference, the parties indicated that the Venture Title account may have been set up by a principal of Prajna without the knowledge of Venture Title or its members.

[4] In the alternative, Texas Capital alleges that First American Title and First American Trust held and disbursed the funds transferred as bailee, or trustee, with Texas Capital as bailor or settlor and beneficiary.

Western District of Kentucky on August 20, 2008.

In August 2009, Texas Capital brought this action in Jefferson Circuit Court alleging that First American Title and First American Trust had breached the implied contract with Texas Capital, had breached their duty to inform[5] Texas Capital of Prajna's requests and had violated certain provisions of the Uniform Commercial Code.[6] Texas Capital also alleged various other common law causes of action, including negligence, professional negligence, breach of fiduciary duty and assumpsit for money had and received. The Complaint seeks money damages in the amount of $3,248,056.05, along with attorneys fees and expenses.

Defendants removed to federal court and then moved to dismiss, based, in part, on the assertion that certain facts in the Complaint were not pled with sufficient specificity. After the motion was fully briefed, Plaintiffs filed a First Amended Complaint detailing additional facts and adding a legal claim,[7] and then a Sur-Reply to Defendants' dismissal motion. Defendants then filed a Motion to Strike Plaintiffs' First Amended Complaint, and Plaintiffs followed with a Motion for Leave to File First Amended Complaint.

---

[5] Plaintiffs argue that Defendants are liable for the Venture Title losses because they failed to inform Plaintiffs about Prajna's unusual requests to return the money to it, rather than disburse it to the sellers. Plaintiffs assert that they never would have made the $1.3 million in transfers to the Venture Title account had they known about Prajna's previous requests.

[6] Specifically, Plaintiffs assert that First American Trust is liable under Cal. U. Com. Code § 11302 or Regulation J, 12 C.F.R. § 210.25 et seq. As noted by the parties, Regulation J incorporates the Uniform Commercial Code ("UCC"), which is the same as the California Uniform Commercial Code in all respects relevant to his case. As such, the Court cites to the UCC provisions, rather than the California code, throughout.

[7] Plaintiffs added a cause of action for aiding and abetting breach of fiduciary duty.

4

II.

The Court will first address Defendants' Motion to Strike and Plaintiffs' Motion for Leave, because the resolution of those motions impacts the Court's analysis of Defendants' Motion to Dismiss.

In their motion to strike, Defendants argue that a recent revision to Federal Civil Procedure Rule 15(a)(1) – which, as of December 1, 2009, allows only 21 days after service of a 12(b)(6) motion to file an amended complaint as a matter of right – should apply retroactively to prevent Plaintiffs from filing the Amended Complaint.

The Court finds it unnecessary to address the retroactive application of the revision to Rule 15. Instead, it will grant Plaintiffs' Motion for Leave to File First Amended Complaint and will treat the Amended Complaint as the active Complaint for the purpose of the pending motions. This approach is proper because Rule 15(a) provides that "[t]he court should freely give leave when justice so requires." Where, as here, discovery has not begun and Defendants are not prejudiced, justice requires the Court to allow Plaintiffs to file their Amended Complaint. *Seals v. Quarterly County Court*, 526 F.2d 216, 219 (6th Cir. 1975), citing *Foman v. Davis*, 371 U.S. 178, 182 (1962).

III.

In deciding a motion to dismiss, a district court must accept as true the plaintiff's well-pleaded facts and draw all reasonable inferences in favor of the complaint. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003). A complaint may not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support in support of his claim that would entitle him to relief." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679

5

(6th Cir. 1988) (internal citation omitted). Defendants offer three sets of arguments that the Court will consider in turn.

IV.

Defendants seek dismissal of all claims against First American Trust. Their arguments are twofold. First, Defendants say that Uniform Commercial Code Article 4A, the UCC provision Texas Capital cites in Count II, does not apply to First American Trust and actually absolves the Bank of responsibility. Second, Defendants assert that the common law causes of action against First American Trust should be dismissed because the UCC preempts them.

Defendants claim that UCC § 4A-302, which requires certain banks to follow the payment instructions they receive, applies only to "intermediary" banks, and not beneficiary banks, such as First American Trust.[8] *See* UCC § 4A-103(a)(3) (defining "beneficiary's bank"); *see also* UCC § 4A-104(b)(defining intermediary bank). Defendants further argue that a payment order to a beneficiary bank cannot contain any conditions, other than a time of payment condition. In short, Defendants contend that First American Title is the proper Defendant, rather than the Bank, which was only required to follow First American Title's instructions. In response, Texas Capital argues that it would be premature for the Court to dismiss First American Trust without the benefit of discovery to show what role it played in the disputed transactions.

The Court agrees with Defendants that, in a typical transaction, only be First American

---

[8] In a transaction such as the one that occurred in this case, the originating bank (Texas Capital) sends a payment order to a receiving bank (First American Trust). In some transactions, the receiving bank is the bank for the beneficiary of the funds, which would make it a "beneficiary" bank. *See* UCC § 4A-103(a)(3). At other times, the receiving bank is an "intermediary" bank responsible for sending the funds on to a different beneficiary bank. *See* UCC § 4A-104(b). Here, the parties dispute whether First American Trust was a beneficiary bank, and if so, whether its actions were limited to that of a beneficiary bank.

Title, and not its bank, would be liable for wrongful transfers of money in escrow. The Court's discussion with the parties confirmed the absence of evidence that the relationship here, between First American Title and First American Trust, is anything other than the typical escrow agent and bank relationship. Consequently, the Court will dismiss First American Trust, without prejudice, at this time.

If, at any point in the future, evidence to contrary arises, or First American Title asserts a defense based on allegedly wrongful actions by First American Trust, the Court will allow Plaintiffs leave to add First American Title as a Defendant. The Court need not discuss Defendants' second argument.

V.

Defendants next assert that they should not be held liable for $1.3 million in loans transferred to an account in the name of Venture Title. They offer various grounds on which the Court could dismiss these claims, including: (1) Plaintiffs did not sufficiently plead the existence of an agency relationship, nor did they plead that Venture Title owed a duty or breached a duty to Plaintiffs, or (2) even if there was an agency relationship, the alleged damages caused by Venture Title are too attenuated and remote from the alleged duty breach to impose liability on Defendants, (3) that Plaintiffs' own negligence was the cause of Plaintiffs' losses, and (4) that Defendants did not have a duty to inform Plaintiffs of Prajna's requests.

Plaintiffs' Amended Complaint renders the first argument moot because it alleges an agency relationship between the companies and further asserts that Venture Title engaged in wrongful acts or omissions as escrow agent. Defendants' second argument is based primarily on its assertion that Prajna's independent and potentially criminal acts break the chain of causation

7

between Defendants actions and Plaintiffs' damages. However, Kentucky law does not treat intervening third-party criminal acts as a superceding cause breaking the chain of causation, if the acts were reasonably foreseeable. *James v. Meow Media*, 300 F.3d 683, 699 (6th Cir. 2002), citing *Britton v. Wooten*, 817 S.W.2d 443, 449-50 (Ky. 1991). So the ultimate question is whether Prajna's acts were foreseeable. Plaintiffs argue here that the acts were foreseeable because they were exactly the sort of acts an escrow is designed to prevent. Defendants disagree. Ultimately, the Court finds that it is premature, at this stage of the litigation, to rule on the question. Discovery will likely reveal relevant details about the nature of Prajna's acts, Defendant's relationship to Venture Title and Venture Title's relationship to the account bearing its name. Until the role of each entity is clear, the Court cannot determine, as a matter of law, whether Prajna's acts were foreseeable such that Defendants could be liable for them.

Defendants' other arguments likewise involve factual determinations that the Court is unable to make at this time. Defendants' negligence argument is really a defense, and not a challenge to a properly pleaded complaint, and thus it is not appropriate for the Court to consider the issue in deciding a motion to dismiss. Also, without the aid of discovery, including additional facts about the relationship between Plaintiffs and Defendants, the Court cannot determine whether Defendants did or did not have a duty to inform the Plaintiffs of Prajna's requests and Defendants' subsequent transfers. For all of these reasons, the Court declines to the claims related to the $1.3 million in transfers to the Venture Title account.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Leave to File a First Amended Complaint is SUSTAINED.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss is partially SUSTAINED in that Defendant First American Trust is dismissed without prejudice. The remainder of the Motion to Dismiss is DENIED.

Defendants' Motion to Strike is moot.

This is NOT a final order.

cc: Counsel of Record