UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09CV-661-H

TEXAS CAPITAL BANK, N.A., et al.,

PLAINTIFFS

V.

FIRST AMERICAN TITLE INSURANCE CO.,                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Texas Capital Bank, N.A. and its insurers (collectively, "Texas Capital" or "Plaintiffs") have sued Defendant, First American Title Insurance Company ("First American"), for the loss of $1.9 million[1] Texas Capital had wired to First American for the purpose of closing home mortgage loan transactions.  Plaintiffs allege First American transferred those funds to Bounmy Phouthavong ("Phouthavong")[2], an officer at a residential mortgage loan company, without permission, breaching its duties as a bailee of Texas Capital's money.  Defendant filed a third-party complaint against Phouthavong stating a claim for "allocation of fault" under Ky. Rev. Stat. § 411.182, to which Phouthavong did not answer.

Now before the Court are several motions: (1) Defendant's motion for default judgment as to its third-party complaint; (2) Plaintiffs' motion to strike Defendant's third-party complaint; and (3) Plaintiffs' motion to prohibit Defendant from apportioning fault to Phouthavong. For the

---

[1] The Complaint sought damages of $3.2 million, but this Court's previous order dismissed Texas Capital's claim for funds it wired to a fraudulent account at National City Bank.  *Texas Capital Bank, N.A. v. First Am. Title Ins. Co.*, No. 3:09CV-661-H, 2011 WL 4500621 (W.D.Ky. Sept. 27, 2011).

[2] Ms. Phouthavong is currently serving time in federal prison after pleading guilty to charges of criminal bank and wire fraud for her conduct related to this action.  *U.S. v. Bounmy Phouthavong*, No. 3:10-CR-36-JHM (W.D. Ky. May 13, 2010).

reasons that follow, on the most important issue here, the Court concludes that First American is not entitled to an apportionment instruction.

I.

The Court first addresses Plaintiffs' motion to strike Defendant's third-party complaint, as resolution of that motion also will dispose of Defendant's motion for default judgment. Plaintiffs argue that the Court should strike the third-party complaint because Defendant has failed to state a proper claim against Phouthavong. *See* Fed. R. Civ. P. 14(a)(4) (any party may move to strike a third-party complaint). The third-party complaint pleads a single cause of action for allocation of fault under Ky. Rev. Stat. § 411.182, but under Kentucky law apportionment is not a separate cause of action. *Burton v. HO Sports Co., Inc.*, No. 4:06-CV-100-JHM, 2009 WL 1390832, at \*2 (W.D.Ky. May 14, 2009) (citing *Hall v. MLS Nat'l Med. Evaluations, Inc.*, No. 05-185-JBC, 2007 WL 1385943, at \*2 (E.D.Ky. May 8, 2007)).

First American cites no case or other authority supporting its contention that § 411.182 provides a substantive cause of action for apportionment. The Court finds no such authority. Thus, the Court will sustain Plaintiffs' motion and strike the third-party complaint. With the third-party complaint stricken, Defendant's motion for default judgment is moot. However, First American rightly notes that even where courts have dismissed such claims, a jury instruction on apportionment may still be appropriate. *See, e.g.*, *ISP Chemicals LLC v. Dutchland, Inc.*, 771 F. Supp. 2d 747, 752 (W.D.Ky. 2011) (dismissing claim for apportionment but noting defendant had preserved its right to an apportionment instruction at trial). Plaintiffs oppose such an apportionment instruction in their own motion, which the Court considers below.

2

II.

The parties dispute whether First American is entitled to an instruction at trial apportioning fault to Phouthavong or instead must pursue a claim against Phouthavong for indemnity.  Phouthavong's lack of assets to satisfy a judgment against her makes this dispute one of great significance.  If this Court allows apportionment, then Texas Capital would bear the near-certain risk that at least part of its potential damages award would be uncollectible.

In contrast, if the apportionment statute does not apply, First American would be responsible for the entire judgment, leaving as its only recourse a claim for indemnity against Phouthavong.  Any judgment on such a claim would likewise be uncollectible.  Thus, at stake here is who will bear the risk of having an uncollectible judgment.

III.

Plaintiffs make two arguments for denying an apportionment instruction at trial.  The Court need only consider one.[3]  That argument is that § 411.182 does not apply where First American and Phouthavong were not *in pari delicto* and First American's only claim against Phouthavong is for indemnity.  Defendant responds with two arguments: (1) § 411.182 requires apportionment "in all tort actions," including actions involving negligent and intentional tortfeasors; and (2) a finding that fault should not be apportioned to Phouthavong would also require a finding that First American's conduct was not the proximate cause of Texas Capital's

---

[3] Plaintiffs also argue that even if apportionment did apply to the underlying facts of this case, the dismissal of Defendant's third-party complaint for apportionment bars an apportionment instruction because § 411.182 applies only to parties in a suit.  *See Jefferson Cnty. Commonwealth Atty's Office v. Kaplan*, 65 S.W.3d 916, 922 (Ky. 2001).  However, this Court has previously allowed an apportionment instruction against a third-party defendant even after all claims against that defendant had been dismissed.  *See ISP Chemicals*, 771 F. Supp. 2d at 752.  The Court expresses no opinion on this argument because, as explained below, the Court finds apportionment of fault does not apply to this set of facts.

losses.  The Court will address each argument in turn.

A.

The starting premise of Plaintiffs' argument is apportionment and indemnity are mutually exclusive legal concepts – when one applies to a case, the other does not.  Although tort defendants often "file third-party complaints seeking 'indemnity and/or contribution,' these two concepts represent separate and distinct remedies which . . . are applicable to completely different fact situations."  *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 778 (Ky. 2000).  The *Degener* court explained that apportionment of fault in a several liability scheme obviated claims for contribution among joint tortfeasors whose liabilities are determined in the original action.  Since apportionment replaced a subset of contribution claims, and contribution and indemnity "are applicable to completely different fact situations," then it follows that apportionment and indemnity are likewise exclusive of one another.  *See id.* at 780 (finding apportionment has no application to the common law right of indemnity); *see also Johnson v. Uptown Café Co.*, No. 3:04-CV-80-H, U.S. Dist. LEXIS 7391, at *3 (W.D. Ky. Feb 7, 2005) (same) (citing *Degener*, 27 S.W.3d at 780).

The *Degener* court also described the circumstances in which a defendant has a right to apportion liability and when its right is to indemnity.  Apportionment of liability arises "when two or more joint tortfeasors are guilty of concurrent negligence of substantially the same character which converge to cause the plaintiff's damages."  *Id.* at 778.  Such joint tortfeasors "are said to be 'in pari delicto.'"  *Id.*  Indemnity, in contrast, "is available to one exposed to liability because of the wrongful act of another with whom he/she is not in pari delicto."  *Id.* at 780.  Based on principles of equity, indemnity cases fall into two classes:

4

"'(1) Where the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury.'"

*Id.* (quoting *Louisville Ry. Co. v. Louisville Taxicab & Transfer Co.*, 77 S.W.2d 36, 39 (Ky. 1934)).

Plaintiffs argue First American and Phouthavong were not *in pari delicto* and instead likely fall under the second class of indemnity cases described in *Degener*.  The parties agree Phouthavong created fake mortgage loan transactions to cause Texas Capital to wire money to First American and then told First American that Texas Capital wired the money by mistake and that the money should be transferred to an account with her employer.  Plaintiffs allege First American violated its duties as bailee of Texas Capital's funds when it wired the money to Phouthavong without Texas Capital's permission.[4]  They argue First American's alleged tortious conduct, negligent handling of bailed property, was separate and distinct from Phouthavong's tortious conduct, an active and intentional defrauding of both Texas Capital and First American.

This Court previously recognized "[t]here is no simple, categorical way to determine when indemnity applies" as opposed to apportionment.  *Johnson*, 2005 U.S. Dist. LEXIS 7391, at *6.  The Court looks to two sources for guidance in determining whether First American and Phouthavong were *in pari delicto*: Kentucky cases in which courts have made similar judgments and the Restatement (First) of Restitution.  *See id.* ("Kentucky courts have also relied on the factual illustrations provided by . . . the Restatement (First) of Restitution as guideposts for

---

[4] This Court's prior order determined a bailment relationship existed between Texas Capital and First American, but a genuine issue of material fact existed as to the terms of that bailment.  *See Texas Capital Bank, N.A. v. First Am. Title Ins. Co.*, No. 3:09CV-661-H, 2011 WL 4500621, at *5 (W.D. Ky. Sept. 27, 2011).

5

determining when indemnity applies.") (citations omitted).  Both sources point to the same

conclusion – First American may be entitled to indemnity but not apportionment in these

circumstances.

B.

Perhaps the most-cited Kentucky Supreme Court case on parties acting *in pari delicto* is

*Brown Hotel Co. v. Pittsburgh Fuel Co.*, 224 S.W.2d 165 (Ky. 1949), where the plaintiff sought

indemnity for damages it had paid to a pedestrian injured on its premises from a manhole cover

defendant left unsecured.  The Court noted the defendant's conduct was the "primary, efficient

and direct cause of the accident," while plaintiff's negligence was failure to check the

defendant's work and keep its premises clear of dangers.  *Id.*, at 167.  Since the parties "were in

fault but not the same fault toward the party injured" and were "not acting jointly or concurrently

or contributorily," the Court held they were not *in pari delicto* and plaintiff was entitled to

indemnity.  *Id.*

Later cases followed the same approach as *Brown Hotel*.  Thus, a restaurant and security

company were not *in pari delicto* with an individual who assaulted a victim on the restaurant's

premises.  *Crime Fighters Patrol v. Hiles*, 740 S.W.2d 936, 939-40 (Ky. 1987).  The *Degener*

case provides two examples, as the court decided a companion case in the same opinion: (1) a

contractor was not *in pari delicto* with individuals who stole its dynamite to build bombs and (2)

a medical clinic was not *in pari delicto* with a physician who sexually harassed and assaulted its

employee.  27 S.W.3d at 781.  The Kentucky Court of Appeals held two dram shops were not *in

pari delicto* with the intoxicated tortfeasor they served alcohol, but were *in pari delicto* with

6

each other.[5]  *Jackson v. Tullar*, 285 S.W.3d 290, 295 (Ky. Ct. App. 2007).  Finally, this Court found a restaurant was not *in pari delicto* with an architect who allegedly was negligent in designing the restaurant's entrance.  *Johnson*, 2005 U.S. Dist. LEXIS 7931, at *10.

The facts here fit with the *Brown Hotel* line of cases.  Here, both First American and Phouthavong are allegedly at fault for Texas Capital's injury, but not the same fault.  *See Brown Hotel*, 224 S.W.2d at 167.  First American's alleged fault was in releasing Texas Capital's funds to a third party without permission.  Much like the Brown Hotel breached its duty to the pedestrian by allowing Pittsburgh Fuel to create an unsafe condition on its premises, First American breached its duty to Texas Capital by allowing Phouthavong to order Texas Capital's money transferred to herself.  Phouthavong's fault was pursuing a fraudulent scheme, comparable to the assailant in *Crime Fighters Patrol* or the dynamite thief in *Degener*.  Although her conduct triggered First American's breach of duty, the same is true of the primary tortfeasors in the cases discussed above.  Phouthavong acted no more jointly with First American than a security company did with an assailant or a bar did with a drunk driver.

## C.

Restatement (First) of Restitution, which the Kentucky Supreme Court has looked for guidance on indemnity, supports the same conclusion.  *See, e.g.*, *Crime Fighters Patrol*, 740 S.W.2d at 939-40; *and Eichberger v. Reid*, 728 S.W.2d 533, 535 (Ky. 1987); *see also Johnson*, 2005 U.S. Dist. LEXIS 7931 at *6 (applying Restatement of Restitution § 95).  The *Crime Fighters Patrol* opinion quotes § 94, governing persons with a duty to protect interests of

---

[5] The court was applying specific dram shop statutes but its *in pari delicto* analysis was based on the same common law at issue here.  The court concluded the dram shops could seek indemnity from the intoxicated tortfeasor and that fault should be apportioned as between the dram shops, since they "committed similar acts [having] a similar relationship to a plaintiff's ultimate injury."  *Jackson*, 285 S.W.3d at 297.

another.  740 S.W.2d at 940.  That section provides:

> "A person who has become liable in tort to another because of an injury caused by his negligent failure to protect the other's person or property from the tortious conduct of a third person is entitled to indemnity from such third person for expenditures properly made in the discharge of such liability, if the payor could have recovered from the third person for an injury so caused to himself or to his own property."

Restatement (First) of Restitution § 94 (1937).  The comment to the rule explains that it applies specifically to a bailee "liable to the beneficiary or bailor because of his negligence in failing to protect the subject matter from intentional harm done by a third person."  *Id.*  First American's potential liability to Plaintiffs is for its alleged negligence in failing to protect Texas Capital's funds from intentional harm by Phouthavong.  Both Kentucky case law and the Restatement (First) of Restitution indicate indemnity, not apportionment, is appropriate in this circumstance.

### D.

Defendant raises two arguments in defense of its position that fault should be apportioned to Phouthavong.  Neither argument directly addresses Plaintiffs' proposition that apportionment of fault and indemnity cannot apply to the same set of facts or that this case falls under the indemnity line of cases.  Instead, First American argues (1) apportionment applies in all tort actions and (2) a holding that fault cannot be apportioned to Phouthavong also requires the conclusion that First American's conduct was not the proximate cause of Plaintiffs' losses.  The Court has assessed both arguments and finds them unpersuasive.

### i.

First American argues the Kentucky apportionment statute mandates its application "[i]n all tort actions," including those involving intentional and negligent tortfeasors.  Ky. Rev. Stat. Ann. § 411.182.  The argument's two propositions both fail to rebut Plaintiffs' argument for

denying an apportionment instruction.  The broad proposition that § 411.182 must apply to every tort action fails as clearly contrary to Kentucky case law.  The narrower proposition – § 411.182 applies between intentional and negligent tortfeasors – ignores the predicate question of whether the tortfeasors are *in pari delicto* and thus has no bearing on whether First American may have fault apportioned to Phouthavong rather than seek indemnity.

No doubt Defendant's interpretation of § 411.182 as applying to every tort action is a logical, coherent reading of the statute.  The Kentucky Supreme Court, however, has already rejected that interpretation in the *Degener* decision, clarifying that any prior case law[6] suggesting the development of apportioned liability eliminated common law indemnity "is expressly disapproved."  27 S.W.3d at 781.  The clear Kentucky precedent allows apportionment of fault only among parties *in pari delicto*.

First American dedicates much of its argument to the point that apportionment of fault applies between intentional and negligent tortfeasors.  The cases First American cites support that proposition, but in no way suggest apportionment is appropriate if such tortfeasors are not *in pari delicto*.  *See, e.g.*, *Hilsmeier v. Chapman*, 192 S.W.3d 340, 344 (Ky. 2006) (holding "comparative fault principles apply equally to negligent and intentional torts in the affirmative" without discussing *in pari delicto* requirement).  In *Hilsmeier*, the estate of a donor challenged an inter vivos gift to Hilsmeier that was intended to pass to the co-defendant, Allen, who was the donor's close friend and Hilsmeier's daughter.  Nothing in the opinion suggests Hilsmeier and Allen were not *in pari delicto*.  The case does not mention *Degener*, let alone alter its holding.

---

[6] The court noted *Dix & Assocs. Pipeline Contractors, Inc. v. Key*, 799 S.W.2d 24 (Ky. 1990) and *Roman Catholic Diocese v. Secter*, 966 S.W.2d 286 (Ky. Ct. App. 1998), two cases on which First American relies, did not hold apportionment of fault eliminated common law indemnity.

The upshot is fault may be apportioned between intentional and negligent tortfeasors, so long as they were *in pari delicto*.  Otherwise, indemnity is the appropriate recourse for a party secondarily liable to a tort victim.

ii.

First American also argues that accepting Plaintiffs' position requires the conclusion that First American's conduct was not the proximate cause of Plaintiffs' losses.  This argument also directly conflicts with the *Degener* holding by creating a false dichotomy: either a defendant is liable to plaintiff and can apportion fault, or a defendant is not liable at all.  If this were true, an action for indemnity would exist in name only.

First American cites no case law supporting its argument.  Indeed, its argument undermines a fundamental premise of indemnity – equity may remedy situations where the law allowed an injured party to recover from one party when another party "was the primary and efficient cause of the injury."  *Degener*, 27 S.W.3d at 780.  The Court's conclusion here that First American was not *in pari delicto* with Phouthavong does not mean First American's alleged negligence did not proximately cause Plaintiffs' injury.

Couched within Plaintiffs' broad argument is a more narrow contention: that First American was an alleged active wrongdoer, whereas in *Degener* the defendant's tortious conduct was passive.  Although courts have used labels such as "active/passive" and "primary/secondary," First American concedes a focus on these labels should yield to consideration of the "underlying equitable principles and the operative facts behind these labels." *Johnson*, 2005 U.S. Dist. LEXIS 7391, at *6 (citations omitted).  Indeed, the analysis remains whether the tortfeasors acted "jointly or concurrently or contributorily" to the same injury, not

10

whether both parties were merely "active" in their respective fault. *Brown Hotel*, 224 S.W.2d at 167.

First American's alleged negligent conduct included a positive act – transferring Texas Capital's money to Phouthavong – but it was not acting jointly with Phouthavong. First American allegedly breached its duties as bailee of Texas Capital's funds by failing to protect against the exact type of harm the bailment relationship contemplates and seeks to avoid. Had First American known about Phouthavong's fraudulent scheme and participated in it, an apportionment instruction would be far more likely. But as it stands, First American's fault, if any, was as a bailee breaching a duty, not as a contributor to a fraud.

IV.

In summary, the principles of equity provide a greater protection to the defendant who is only constructively or secondarily liable to the injured party than the defendant who acted *in pari delicto* with the primary tortfeasor. The former may recover fully from the primary tortfeasor through indemnity; the latter must still pay its apportioned share of fault. The particular circumstances of this case, where the alleged primary tortfeasor is unlikely to satisfy any judgment entered against her, cannot alter the clear Kentucky precedent.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiffs' motion to strike the third-party complaint is SUSTAINED and Defendant's motion for default judgment on its third-party complaint is MOOT.

IT IS FURTHER ORDERED that the jury will not receive an instruction as to apportionment of fault to Phouthavong under Ky. Rev. Stat. § 411.182.

IT IS FURTHER ORDERED that Defendant is GRANTED leave to file a third-party complaint for indemnity against Phouthavong, if it so desires.

cc:     Counsel of Record