UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**(ELECTRONICALLY FILED)**

**TEXAS CAPITAL BANK, N.A.,**

**and**

**LIBERTY MUTUAL INSURANCE EUROPE
LIMITED TRADING AS LIBERTY
INTERNATIONAL UNDERWRITERS,**

**and**

**CERTAIN UNDERWRITERS AT LLOYD'S
LONDON WHO ARE MEMBERS OF
SYNDICATE NOS. 4444, 2003 AND 4000
SUBSCRIBING TO BOND NO. FA054730G002**

**v.**

**FIRST AMERICAN TITLE INSURANCE
COMPANY,**

**and**

**FIRST AMERICAN TRUST, FSB**

CIVIL ACTION NO.
3:09-CV-661 JGH

**PLAINTIFFS**

**DEFENDANTS**

**SECOND AMENDED COMPLAINT**

Plaintiff Texas Capital Bank, N.A. ("Texas Capital") and its insurers Liberty Mutual

Insurance Europe Limited trading as Liberty International Underwriters ("Liberty") and Certain

Underwriters at Lloyd's London who are members of Syndicate Nos. 4444, 2003 and 4000

subscribing to Bond No. FA054730g002 ("Lloyd's Underwriters") (Liberty and Lloyd's

Underwriters, collectively, "Insurers") (Texas Capital and Insurers, collectively, "Plaintiffs")

state the following as their second amended complaint against Defendants First American Title Insurance Company ("First American Title") and First American Trust, FSB ("First American Trust") (collectively, "First American" or "Defendants").   This complaint relates to the mishandling of funds placed in escrow and First American's actions and omissions regarding same.

## THE PARTIES

1.      Texas Capital is a Texas bank with its principal place of business in Dallas, Texas.   Part of Texas Capital's business involves the purchase of interests in residential mortgages from mortgage lenders.  The mortgages are then sold to permanent investors located throughout the United States.

2.      Insurers are insurers for Texas Capital.  Insurers have reimbursed Texas Capital for a portion of the loss described in this complaint and have taken assignment of Texas Capital's claims.

3.      First American Title is a California corporation with its principal place of business in Santa Ana, California.  First American Title is licensed to do business in Kentucky and maintains an office at 100 Mallard Creek Road, Suite 400, Louisville Kentucky  40207.  First American Title conducts business activities including acting as escrow agent for real estate closings.

4.      First American Trust is registered as a California bank with its principal place of business in California.  First American Trust is an affiliate of First American Title and is engaged in business activities including facilitating the escrow transactions of First American Title.

5.      First American Title and First American Trust have an office or offices located at 5 First American Way, Santa Ana, California, 92707.

6.      First American Title and First American Trust share the same parent corporation, First American Corporation.

**JURISDICTION AND VENUE**

7.      The Jefferson Circuit Court, in which this action was filed, had jurisdiction of this civil action under Section 112 of the Kentucky Constitution and KRS § 23A.010.

8.      The Jefferson Circuit Court had personal jurisdiction over the Defendants because they transact business in the Commonwealth of Kentucky.  First American Title is registered with the Kentucky Secretary of State to transact business in Kentucky.  First American Trust is subject to such jurisdiction pursuant to KRS 454.210 for its acts including but not limited to transacting business in Kentucky, contracting to supply services in Kentucky, and causing tortious injury in Kentucky.

9.      Venue is proper in the Jefferson Circuit Court because all or a substantial part of the events or omissions giving rise to the claims alleged here occurred in Jefferson County.

10.     On or about August 27, 2009, the Defendants removed this action to the United States District Court for the Western District of Kentucky, alleging this Court has original diversity jurisdiction under 28 U.S.C. § 1332.

**FACTS**

**Related Entities and Individuals**

11.     Prajna Group, Inc. d/b/a Liberty Mortgage Funding ("Prajna") is an Illinois corporation and has or had its principal office at 9300 Shelbyville Road, Suite 400 in Louisville, Kentucky.  Prajna was a residential mortgage licensee that extended residential mortgage loans to consumers in at least eleven (11) states, including Kentucky.

12.     On March 7, 2008, Prajna and Texas Capital entered into a mortgage warehousing

3

agreement, pursuant to which, among other things, Texas Capital agreed to fund certain consumer home mortgage loans originated by Prajna in exchange for a participation or ownership of the majority interest in each of those loans, and the right and ability to sell those loans on the secondary mortgage market.  The mortgage warehousing agreement is attached and incorporated here as **Exhibit 1** (the "Mortgage Warehousing Agreement").

13.     First American conducted a substantial amount of business with Prajna.

14.     On information and belief, the two individuals who were First American's principal representatives at the Louisville Office, Chris Mooser and Shawn Freibert, formed Venture Title Group, LLC ("Venture Title") to act as agent for First American.

15.     On information and belief, Mooser and Freibert formed Venture Title to conduct business activities, including but not limited to acting as escrow agents for real estate closings, following First American's decision to close its Louisville, Kentucky office.

16.     Venture Title  was formed in April 2008 and was dissolved on June 1, 2009. Venture Title's registration with the Kentucky Secretary of State is attached and incorporated here as **Exhibit 2**.  The Order of Dissolution of Venture Title is attached and incorporated here as **Exhibit 3**.

**The Contract Between Texas Capital and First American**

17.     From approximately March 7, 2008 through early August 2008, Texas Capital wired funds and disbursement instructions for First American and Venture Title, as agent for First American Title, to hold funds in escrow to fund the closing of home loans originated by Prajna and to purchase interests in those mortgage loans, and Defendants and Venture Title did so.

18.     Such transactions reflect a contract, both express and implied, between Texas

4

Capital and First American whereby Texas Capital agreed to wire funds to First American and First American agreed to disburse the funds as authorized by Texas Capital and to complete the loans for which the funds were advanced (the "Contract").

19.     Pursuant to the Contract, First American held the funds transferred from Texas Capital to them as an escrow agent for Texas Capital.

20.     First American directly benefited from the Contract.

21.     At least 29 such transactions were closed pursuant to the Contract, with First American completing the loans and disbursing the funds for the closings of the loans for which the funds were advanced

22.     In the alternative to the previous paragraphs, pursuant to the Contract, First American held and disbursed the funds transferred from Texas Capital to them as a bailee, or as a trustee, with Texas Capital as bailor or settlor and beneficiary, and First American benefitted from the same.

**The First American Loans**

23.     On or about June 27, 2008, Texas Capital received instructions for wiring money to First American for purposes of funding and closing a home loan originated by Prajna to borrower Charles Kerekes, for which closing First American was to act as escrow agent (the "Kerekes Loan").  On or about June 27, 2008, Texas Capital wired to First American as escrow agent $132,079.90 for the Kerekes Loan.  The wiring instructions for the Kerekes Loan are attached and incorporated here as **Exhibit 4**.

24.     As escrow agent, First American had a duty to close the loan and disburse the Kerekes Loan funds to the seller of, or existing lienholders on, the real property that was to secure repayment of the Kerekes Loan.  If First American understood that they would not serve

5

as escrow agent, they had a duty to remit or return the funds to Texas Capital.

25.     Instead, First American transferred all or substantially all of the Kerekes Loan funds to Prajna without the knowledge or consent of Texas Capital.

26.     Soon thereafter, Texas Capital received a note that appeared to be signed by Charles Kerekes for the Kerekes Loan.

27.     On or about July 3, 2008, Texas Capital received wiring instructions for wiring money to First American for purposes of funding and closing a home loan originated by Prajna to borrower Ronald Neff, for which closing First American was to act as escrow agent (the "Neff Loan").   On or about July 3, 2008, Texas Capital wired to First American as escrow agent $331,740.00 for the Neff Loan.   The wiring instructions for the Neff Loan are attached and incorporated here as **Exhibit 5A**.

28.     As escrow agent, First American had a duty to close the loan and disburse the Neff Loan funds to the seller of, or existing lienholders on, the real property that was to secure repayment of the Neff Loan.  If First American understood that they would not serve as escrow agent, they had a duty to remit or return the funds to Texas Capital.

29.     Instead, First American transferred all or substantially all of the Neff Loan funds to Prajna without the knowledge or consent of Texas Capital.  The bank account statement for Prajna's account at National City Bank (the "Prajna Bank Account Statement") shows that Prajna received $331,740.00 as a wire transfer on or about July 7, 2008.  The relevant pages from the Prajna Bank Account Statement are marked to show the relevant entry and are attached and incorporated here as **Exhibit 5B**.  The wire transfer information sheet for this transfer is attached and incorporated here as **Exhibit 5C**.

30.     Soon thereafter, Texas Capital received a note that appeared to be signed by

Ronald Neff for the Neff Loan.

31.     On or about July 10, 2008, Texas Capital received instructions for wiring money to First American for purposes of funding and closing a home loan originated by Prajna to borrower Glen MacPherson, for which closing First American was to act as escrow agent (the "MacPherson Loan").   On or about July 10, 2008, Texas Capital wired to First American as escrow agent $302,620.40 for the MacPherson Loan.   The wiring instructions for the MacPherson Loan are attached and incorporated here as **Exhibit 6A**.

32.     As escrow agent, First American had a duty to close the loan and disburse the MacPherson Loan funds to the seller of, or existing lienholders on, the real property that was to secure repayment of the MacPherson Loan.   If First American understood that they would not serve as escrow agent, they had a duty to remit or return the funds to Texas Capital.

33.     Instead, First American transferred all or substantially all of the MacPherson Loan funds to Prajna without the knowledge or consent of Texas Capital.   The Prajna Bank Account Statement shows that Prajna received $670,955.30 as a wire transfer on or about July 11, 2008. The total amount for the MacPherson Loan and the Triolo Loan, discussed below, equals $670,955.30.  The relevant pages from the Prajna Bank Account Statement marked to show the relevant entry are attached and incorporated here as **Exhibit 6B**.  The wire transfer information sheet for this transfer is attached and incorporated here as **Exhibit 6C**.

34.     On or about July 16, 2008, Texas Capital received a note that appeared to be signed by Glen MacPherson for the MacPherson Loan by Federal Express in an envelope with a return address for First American Title at its Louisville office.

35.     On or about July 10, 2008, Texas Capital received instructions for wiring money to First American for purposes of funding and closing a home loan originated by Prajna to

borrower Tom Triolo, for which closing First American was to act as escrow agent (the "Triolo Loan").  On or about July 11, 2008, Texas Capital wired to First American as escrow agent $368,334.90 for the Triolo Loan.  The wiring instructions for the Triolo Loan are attached and incorporated here as **Exhibit 7A**.

36.   As escrow agent, First American had a duty to close the loan and disburse the Triolo Loan funds to the seller of, or existing lienholders on, the real property that was to secure repayment of the Triolo Loan.  If First American understood that they would not serve as escrow agent, they had a duty to remit or return the funds to Texas Capital.

37.   Instead, First American transferred all or substantially all of the Triolo Loan funds to Prajna without the knowledge or consent of Texas Capital.  The Prajna Bank Account Statement shows that Prajna received $670,955.30 as a wire transfer on or about July 11, 2008. The total amount for the Triolo Loan and the MacPherson Loan, discussed above, equals $670,955.30.  The relevant pages from the Prajna Bank Account Statement marked to show the relevant entry are attached and incorporated here as **Exhibit 7B**.  The wire transfer information sheet for this transfer is attached and incorporated here as **Exhibit 7C**.

38.   On or about July 16, 2008, Texas Capital received a note that appeared to be signed by Tom Triolo for the Triolo Loan by Federal Express in an envelope with a return address for First American Title at its Louisville office.

39.   On or about July 11, 2008, Texas Capital received instructions for wiring money to First American for purposes of funding and closing a home loan originated by Prajna to borrower Angel Garcia, for which closing First American was to act as escrow agent (the "Garcia Loan").  On or about July 14, 2008, Texas Capital wired to First American as escrow agent $402,204.79 for the Garcia Loan.  The wiring instructions for the Garcia Loan are attached and

incorporated here as **Exhibit 8A**.

40.     As escrow agent, First American had a duty to close the loan and disburse the Garcia Loan funds to the seller of, or existing lienholders on, the real property that was to secure repayment of the Garcia Loan.  If First American understood that they would not serve as escrow agent, they had a duty to remit or return the funds to Texas Capital.

41.     Instead, First American transferred all or substantially all of the Garcia Loan funds to Prajna without the knowledge or consent of Texas Capital.  The Prajna Bank Account Statement shows that Prajna received $402,204.79 as a wire transfer on or about July 14, 2008. The relevant pages from the Prajna Bank Account Statement marked to show the relevant entries are attached and incorporated here as **Exhibit 8B**.  The wire transfer information sheet for this transfer is attached and incorporated here as **Exhibit 8C**.

42.     On or about July 22, 2008, Texas Capital received a note that appeared to be signed by Angel Garcia for the Garcia Loan by Federal Express in an envelope with a return address for First American Title at its Louisville office.

43.     On or about July 11, 2008, Texas Capital received instructions for wiring money to First American for purposes of funding and closing a home loan originated by Prajna to borrower Bonnie Yarbrough, for which closing First American was to act as escrow agent (the "Yarbrough Loan").  On or about July 14, 2008, Texas Capital wired to First American as escrow agent $377,668.45 for the Yarbrough Loan.  The wiring instructions for the Yarbrough Loan are attached and incorporated here as **Exhibit 9A**.  (The Kerekes Loan, the Neff Loan, the MacPherson Loan, the Triolo Loan, the Garcia Loan, and the Yarbrough Loan, collectively, the "First American Loans") (The funds transferred from Texas Capital for purposes of funding the First American Loans, the "First American Loan Escrow Funds").

44.     As escrow agent, First American had a duty to close the loan and disburse the Yarbrough Loan funds to the seller of, or existing lienholders on, the real property that was to secure repayment of the Yarbrough Loan.  If First American understood that they would not serve as escrow agent, they had a duty to remit or return the funds to Texas Capital.

45.     Instead, First American transferred all or substantially all of the Yarbrough Loan funds to Prajna without the knowledge or consent of Texas Capital.  The Prajna Bank Account Statement shows that Prajna received $377,668.45 as a wire transfer on or about July 14, 2008. The relevant pages from the Prajna Bank Account Statement marked to show the relevant entries are attached and incorporated here as **Exhibit 9B**.  The wire transfer information sheet for this transfer is attached and incorporated here as **Exhibit 9C**.

46.     On or about July 22, 2008, Texas Capital received a note that appeared to be signed by Bonnie Yarbrough for the Yarbrough Loan by Federal Express in an envelope with a return address for First American Title at its Louisville office.

47.     The First American Loan Escrow Funds were held by First American at First American Trust.

48.     Texas Capital discovered what First American had done, and demanded that First American return the First American Loan Escrow Funds.

49.     First American Title responded to Texas Capital's demand by acknowledging that it received the First American Loan Escrow Funds from Texas Capital and that it sent the First American Loan Escrow Funds to Prajna.  It claimed that, in each instance, when it received no closing packet regarding the loans, it immediately contacted Prajna for further direction regarding the funds.  Prajna represented to it that a different escrow agent would act as closing agent for the loans and asked First American to send the First American Loan Escrow Funds for each of the

First American Loans to Prajna itself, rather than return them to Texas Capital (the "Prajna Request For Funds"), and First American complied with the request each time.  See Letter from Laura K. Conrad, First American Title's counsel, to Texas Capital's counsel, dated February 10, 2009, attached and incorporated here as **Exhibit 10** (the "Conrad Letter").

50.     First American Title's employees, First American Trust's employees, or both received the Prajna Request For Funds.

51.     First American Title's employees, First American Trust's employees, or both were involved in the decisions to send Texas Capital's money to Prajna.

52.     First American Title's employees, First American Trust's employees, or both directed the transfers of Texas Capital's funds to Prajna.

53.     First American failed to inform Texas Capital of the Prajna Request For Funds.

54.     First American transferred the First American Loan Escrow Funds to Prajna, without Texas Capital's knowledge or consent.

55.     Prajna did not have authority from Texas Capital to direct the disbursement of funds other than to the seller of, or existing lienholders on, the real property that was to secure repayment of each loan for which those funds were advanced.

56.     Had First American informed Texas Capital of the Prajna Request For Funds, Texas Capital would not have suffered the loss sought to be recovered in this complaint.

## The Venture Title Loans

57.     On information and belief, Mooser and Freibert informed their clients, including Texas Capital, that Venture Title would continue conducting the same business for First American, as a First American agent, after First American closed its Louisville office.

58.     On information and belief, on or about July 15, 2008, an account was opened in

the name of Venture Title at National City Bank (the "Venture Title Account").

59.    On or about July 15, 2008, Texas Capital received instructions for wiring money to Venture Title for purposes of funding and closing a home loan originated by Prajna to borrower Sturgess Killik, for which closing Venture Title, as agent for First American Title, was to act as escrow agent (the "Killik Loan").  On or about July 16, 2008, Texas Capital wired to the Venture Title Account $267,235.00 for the Killik Loan.  The wiring instructions for the Killik Loan are attached and incorporated here as **Exhibit 11**.

60.    The Killik Loan did not close, but the Killik Loan funds have not been returned to Texas Capital.    The Killik Loan funds subsequently were transferred to Prajna without Texas Capital's knowledge or consent.

61.    On or about July 23, 2008, Texas Capital received a note that appeared to be signed by Sturgess Killik for the Killik Loan by Federal Express in an envelope with a return address for Venture Title at its Louisville office.

62.    On or about July 22, 2008, Texas Capital received instructions for wiring money to Venture Title for purposes of funding and closing a home loan originated by Prajna to borrower Clayton Pesillo, for which closing Venture Title, as agent for First American Title, was to act as escrow agent (the "Pesillo Loan").  On or about July 23, 2008 Texas Capital wired to the Venture Title Account $294,880.00 for the Pesillo Loan.  The wiring instructions for the Pesillo Loan are attached and incorporated here as **Exhibit 12**.

63.    The Pesillo Loan did not close, but the Pesillo Loan funds have not been returned to Texas Capital. Upon information and belief, the Pesillo Loan funds were transferred to Prajna or its employee without Texas Capital's knowledge.

64.    On or about July 30, 2008, Texas Capital received a note that appeared to be

12

signed by Clayton Pesillo for the Pesillo Loan by Federal Express with a return address for First American Title at its Louisville office.

65.     On or about July 22, 2008, Texas Capital received instructions for wiring money to Venture Title for purposes of funding and closing a home loan originated by Prajna to borrower Nicholaos Mitsinicos, for which closing Venture Title, as agent for First American Title, was to act as escrow agent (the "Mitsinicos Loan").   On or about July 23, 2008, Texas Capital wired to the Venture Title Account $256,222.59 for the Mitsinicos Loan.   The wiring instructions for the Mitsinicos Loan are attached and incorporated here as **Exhibit 13**.

66.     The Mitsinicos Loan did not close, but the Mitsinicos Loan funds have not been returned to Texas Capital. Upon information and belief, the Mitsinicos Loan funds were transferred to Prajna or its employee, without Texas Capital's knowledge.

67.     On or about July 30, 2008, Texas Capital received a note that appeared to be signed by Nicholaos Mitsinicos for the Mitsinicos Loan by Federal Express in an envelope with a return address for Venture Title at its Louisville office.

68.     On or about July 25, 2008, Texas Capital received instructions for wiring money to Venture Title for purposes of funding and closing a home loan originated by Prajna to borrower  John Cravens, for which closing Venture Title, itself and as agent for First American Title, was to act as escrow agent (the "Cravens Loan").   On or about July 28, 2008, Texas Capital wired to the Venture Title Account $241,064.40 for the Cravens Loan.   The wiring instructions for the Cravens Loan are attached and incorporated here as **Exhibit 14**.

69.     The Cravens Loan did not close, but the Cravens Loan funds have not been returned to Texas Capital.   Upon information and belief, the Cravens Loan funds were transferred to Prajna or its employee without Texas Capital's knowledge.

70.     On or about August 5, 2008, Texas Capital received a note that appeared to be signed by John Cravens for the Cravens Loan by Federal Express in an envelope with a return address for Venture Title at its Louisville office.

71.     On or about August 6, 2008, Texas Capital received instructions for wiring money to Venture Title for purposes of funding and closing a home loan originated by Prajna to borrower Troy Verrett, for which closing Venture Title, itself and as agent for First American Title, was to act as escrow agent (the "Verrett Loan").   On or about August 6, 2008, Texas Capital wired to the Venture Title Account $274,005.62 for the Verrett Loan.   The wiring instructions for the Verrett Loan are attached and incorporated here as **Exhibit 15**.   (The Killik Loan, the Pesillo Loan, the Mitsinicos Loan, the Cravens Loan, and the Verrett Loan, collectively, the "Venture Title Loans").

72.     The Verrett Loan did not close, but the Verrett Loan funds have not been returned to Texas Capital.  Upon information and belief, the Verrett Loan funds were transferred to Prajna or its employee without Texas Capital's knowledge. (The funds transferred from Texas Capital for purposes of funding the Venture Title Loans, the "Venture Title Loan Escrow Funds").  (The First American Loan Escrow Funds and the Venture Title Loan Escrow Funds, collectively, the "Loan Escrow Funds").

73.     The relevant pages of the Venture Title Account statement showing these transfers as deposits to the account is marked to show the relevant entries and is attached and incorporated here as **Exhibit 16.**

74.     Had the Defendants informed Texas Capital of the Prajna Request For [First American] Funds, Texas Capital would not have funded any of the Venture Title Loans, and would not have suffered the loss of the Venture Title Loan Escrow Funds sought to be recovered

in this complaint.  The Defendants are directly liable for this breach of their duty to inform Texas Capital of the Prajna Request For Funds.

75.    Upon information and belief, Venture Title was formed to be an agent for First American Title and held itself out as same.

76.    Upon information and belief, founders of Venture Title, Mooser and Freibert, were First American agents when they founded Venture Title, and they remain First American agents today.

77.    During Venture Title's existence, First American Title represented to the public that Venture Title was its agent.

78.    Venture Title had the same Louisville office address as First American Title and, upon information and belief, Venture Title and First American had some or all of the same Louisville employees (the "Louisville Office").

79.    First American's parent corporation, First American Corporation, listed Venture Title as a "branch office" for First American Title on page 121 of its 2009 directory.  The cover page, table of contents, and page 121 of the 2009 directory are attached and incorporated here as **Exhibit 17**.

80.    The Better Business Bureau of Central and Eastern Kentucky lists First American Title as an alternate business name for Venture Title.  A copy of this report is attached and incorporated here as **Exhibit 18**.

81.    Venture Title's former website contained First American's logo, which indicated Venture Title was First American's "authorized agent."

82.    During its existence, Venture Title was an agent for First American Title, and First American Title is therefore liable for damages caused by acts and omissions of Venture

Title.

83.     To the extent Venture Title's acts and omissions resulted in, allowed, or facilitated Prajna or its employee's acts, including but not limited to opening the Venture Title Account, directing funds to be transferred to the Venture Title Account, and withdrawing funds from the Venture Title Account, First American is liable for such acts and omissions of Venture Title.

84.     To the extent Prajna or its employee was acting as an authorized agent of Venture Title for acts, including but not limited to opening the Venture Title Account, directing funds be transferred to the Venture Title Account, and withdrawing funds from the Venture Title Account, Prajna or its employee was also an authorized agent for First American, and First American is therefore liable for damages caused by those acts.

### *In re Prajna Group, Inc.*

85.     Prajna filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Western District of Kentucky on August 20, 2008.  *See In re Prajna Group, Inc.*, No. 08-33673 (Bankr. W.D. Ky. filed Aug. 20, 2008).

86.     After Prajna's bankruptcy filing, Texas Capital learned that the First American Loans and the Venture Title Loans were fraudulent—i.e., that the designated borrower on each was fictional or was unaware of and had not consented to the loan.

87.     First American did not use the First American Loan Escrow Funds as authorized and have wrongfully declined to return such funds to Texas Capital.

88.     After Prajna's bankruptcy filing, Texas Capital learned that First American had wrongfully transferred the First American Loan Escrow Funds to Prajna.

89.     First American's failure to inform Texas Capital of the Prajna Request For Funds

was wrongful, contrary to its agreement with Texas Capital, and in breach of its duties to Texas Capital.

90.     First American's transfer of the First American Loan Escrow Funds to Prajna or other persons or entities was wrongful, being without authority, contrary to its agreement with Texas Capital, and in breach of its duties to Texas Capital.

91.     Prajna was not an agent for Texas Capital and particularly was not an agent with authority to direct the First American Loan Escrow Funds be transferred to itself.

92.     Prajna breached the Mortgage Warehousing Agreement by, among other acts and omissions, directing the First American Loan Escrow Funds be sent from First American to it.

93.     Texas Capital denies Prajna was its agent, but, to the extent First American contends or it is shown that Prajna was an agent for Texas Capital in any respect, First American knew or should have known that the Prajna Request For Funds, among other acts and omissions of Prajna, was a breach of Prajna's duties, including but not limited to its fiduciary duties as agent, to Texas Capital and was outside any scope of such alleged agency.

94.     Texas Capital has suffered a total loss of not less than $3,248,056.05 as a result of the Defendants' actions and omissions including, but not necessarily limited to, those described above.

## COUNT I
### Breach of Contract
(The Defendants)

95.     The Plaintiffs restate and incorporate by reference the allegations set forth in Paragraphs 1 through 94 above as if fully set forth here.

96.     The Defendants breached the Contract by acts and omissions including but not necessarily limited to:

(a) failing to comply with Texas Capital's directions regarding disbursement of the First American Loan Escrow Funds without Texas Capital's knowledge or consent;

(b) disbursing the First American Loan Escrow Funds when the conditions precedent to disbursal had not been satisfied without Texas Capital's knowledge or consent;

(c) transferring the First American Loan Escrow Funds to Prajna or other unknown persons or entities without Texas Capital's knowledge or consent;

(d) failing to inform Texas Capital of the Prajna Request For Funds or their subsequent transfer; and

(e) failing to remit or return the First American Loan Escrow Funds to Texas Capital.

97.     As a result of the Defendants' breach of contract, Texas Capital suffered a loss of not less than $3,248,056.05, for which the Plaintiffs seek judgment.

<u>**COUNT II**</u>
**Liability under Cal. U. Com. Code § 11302 or Regulation J, 12 C.F.R. § 210.25, et seq.**
(First American Trust)

98.     The Plaintiffs restate and incorporate by reference the allegations set forth in Paragraphs 1 through 97 above as if fully set forth here.

99.     Pursuant to Cal. U. Com. Code § 11302 or Regulation J, 12 C.F.R. § 210.25, et seq., First American Trust, was "obliged to issue, on the execution date, a payment order complying with [Texas Capital's] order . . . ."

100.    Pursuant to the Cal. U. Com. Code or Regulation J, 12 C.F.R. § 210.25, et seq., First American Trust owed certain other duties to Texas Capital.

101.    First American Trust, acting for the Defendants, failed to meet such obligations and duties by transferring the First American Loan Escrow Funds to Prajna in violation of Texas Capital's wire instructions.

102.    As a result of First American Trust's failure to meet its obligations and duties,

Texas Capital suffered a loss of not less than $1,914,648.44, for which the Plaintiffs seek judgment against First American Trust.

## COUNT III
### Negligence
(The Defendants)

103.    The Plaintiffs restate and incorporate by reference the allegations set forth in Paragraphs 1 through 102 above as if fully set forth here.

104.    As Texas Capital's escrow agent, or in the alternative as a bailee or a trustee for Texas Capital, one or both of the Defendants owed to Texas Capital duties including but not necessarily limited to the duty to act with reasonable care and to follow Texas Capital's instructions with respect to the First American Loan Escrow Funds.

105.    The Defendants breached such duties by failing to notify Texas Capital of irregularities regarding the First American Loans.

106.    The Defendants breached such duties by wrongfully disbursing the First American Loan Escrow Funds when the conditions precedent to disbursement had not been satisfied.

107.    The Defendants breached such duties by failing to remit or return the First American Loan Escrow Funds to Texas Capital.

108.    As a result of each of the breaches of duty to Texas Capital by Defendants, Texas Capital suffered a loss of not less than $3,248,056.05, for which the Plaintiffs seek judgment.

## COUNT IV
### Professional Negligence
(The Defendants)

109.    The Plaintiffs restate and incorporate by reference the allegations set forth in Paragraphs 1 through 108 above as if fully set forth here.

110.    The Defendants owed to Texas Capital a duty to act as a reasonably prudent title

insurance company, escrow agent, and escrow bank with respect to the First American Loan Escrow Funds.

111.    The Defendants breached such duties by failing to notify Texas Capital of irregularities regarding the First American Loans.

112.    The Defendants breached such duties by wrongfully disbursing the First American Loan Escrow Funds when the conditions precedent to disbursement had not been satisfied.

113.    The Defendants breached such duties by failing to remit or return the First American Loan Escrow Funds to Texas Capital.

114.    As a result of each of the breaches of duty to Texas Capital by Defendants, Texas Capital suffered a loss of not less than $3,248,056.05, for which the Plaintiffs seek judgment.

**COUNT V**
**Breach of Fiduciary Duty**
(The Defendants)

115.    The Plaintiffs restate and incorporate by reference the allegations set forth in Paragraphs 1 through 114 above as if fully set forth here.

116.    The Defendants owed a fiduciary duty as an escrow agent, or in the alternative as a bailee or a trustee, to Texas Capital.

117.    The Defendants breached such duty by failing to notify Texas Capital of certain irregularities regarding the First American Loans.

118.    The Defendants breached such duty by wrongfully disbursing the First American Loan Escrow Funds when the conditions precedent to disbursement had not been satisfied.

119.    The Defendants breached such duty by failing to remit or return the First American Loan Escrow Funds to Texas Capital.

120.    As a result of the Defendants' breach of its duty to Texas Capital, Texas Capital

suffered a loss of not less than $3,248,056.05, for which The Plaintiffs seek judgment.

## COUNT VI
### Aiding and Abetting Breach of Fiduciary Duty
(The Defendants)

121.    The Plaintiffs restate and incorporate by reference the allegations set forth in Paragraphs 1 through 120 above as if fully set forth here.

122.    Prajna was not an agent for Texas Capital and did not have authority to direct the First American Loan Escrow Funds be transferred to it.

123.    However, to the extent the Defendants contend or it is determined that Prajna was an agent for Texas Capital in any respect, Prajna owed a fiduciary duty as agent to Texas Capital and Prajna breached such duty by acts and omissions including but not limited to making the Prajna Request For Funds and failing to return or remit the First American Loan Escrow Funds to Texas Capital, as a result of which, Texas Capital suffered a loss of not less than $3,248,056.05.

124.    The Defendants had knowledge of each and every fact contained in the paragraphs in this Count.

125.    To the extent Prajna had any fiduciary duty to Texas Capital, the Defendants substantially assisted Prajna in its breach of those duties to Texas Capital by wrongfully transferring the First American Loan Escrow Funds to Prajna, as a result of which, Texas Capital suffered a loss of not less than $3,248,056.05, for which the Plaintiffs seek judgment.

## COUNT VII
### Assumpsit For Money Had And Received
(The Defendants)

126.    The Plaintiffs restate and incorporate by reference the allegations set forth in Paragraphs 1 through 125 above as if fully set forth here.

127.    Texas Capital transferred the Loan Escrow Funds to First American and Venture

Title for the purpose of obtaining certain enforceable and valid notes.

128.   As a result of the Defendants' actions and omissions, Texas Capital transferred escrow funds and did not obtain enforceable and valid notes in exchange for the funds transferred.

129.   As a result, Texas Capital suffered a loss in an amount to be determined, for which the Plaintiffs seek judgment.

### COUNT VIII
**Conversion**
(First American Title)

130.   The Plaintiffs restate and incorporate by reference the allegations set forth in paragraphs 1 through 129 above as if fully set forth here.

131.   Texas Capital had legal title to the First American Loan Escrow Funds at the time they were transferred to, possessed by, and converted by First American Title.

132.   First American Title converted the First American Loan Escrow Funds when it delivered such funds to Prajna without Texas Capital's knowledge or consent.

133.   As a result of First American Title's conversion of the First American Loan Escrow Funds, Texas Capital suffered a loss of not less than $3,248,056.05, for which the Plaintiffs seek judgment.

### PRAYER FOR RELIEF

WHEREFORE, The Plaintiffs pray for judgment on all counts and seeks relief as follows:

A.   Judgment for the Plaintiffs against each Defendant, jointly and severally, in the amount of $3,248,056.05;

B.   Judgment for the Plaintiffs against each Defendant, jointly and severally, for prejudgment and post-judgment interest;

C.      Judgment for the Plaintiffs against each Defendant, jointly and severally, for the costs and expenses of this action including reasonable attorney fees; and

D.      All other relief to which the Plaintiffs are entitled.


Respectfully submitted,


/s/ Lee A. Webb
Lea Pauley Goff
Lee A. Webb
Matthew R. Lindblom
Stoll Keenon Ogden PLLC
2000 PNC Plaza
500 West Jefferson Street
Louisville, KY  40202-2828
Telephone:  (502) 333-6000
Fax:  (502) 333-6099

*Counsel for Plaintiffs Texas Capital Bank, N.A., Liberty Mutual Insurance Europe Limited trading as Liberty International Underwriters, and Certain Underwriters at Lloyd's London who are members of Syndicate Nos. 4444, 2003 and 4000 subscribing to Bond No. FA054730g002*

757576